118 T.C. No. 27

UNITED STATES TAX COURT

BEECH TRUCKING COMPANY, INC., ARTHUR BEECH, TAX MATTERS PERSON,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16452-99.                    Filed May 23, 2002.

P, a trucking company, leases its drivers from an affiliated company. P compensates the drivers at a rate of 24 to 26 cents per mile dispatched, of which amount 6.5 cents is designated as a per diem allowance. R does not dispute that P's per diem payments are ordinary and necessary business travel expenses that are deemed substantiated pursuant to Rev. Proc. 94-77, 1994-2 C.B. 825, and Rev. Proc. 96-28, 1996-1 C.B. 686.

Held: On the facts involved herein, P is the common law employer of the drivers and therefore is subject to the 50-percent limitation of sec. 274(n), I.R.C., to the extent the per diem payments are for the drivers' meal expenses. Held, further, pursuant to Rev. Proc. 94-77, supra, and Rev. Proc. 96-28, supra, the per diem payments are treated as being for the drivers' meal expenses and thus are subject to the sec. 274(n), I.R.C. limitation.

James Allen Brown, for petitioner.

Edith F. Moates and John S. Repsis, for respondent.


THORNTON, Judge: By notice of final S corporation administrative adjustment (FSAA), respondent determined adjustments of $251,885 and $286,878 to the ordinary income of Beech Trucking Co., Inc. (Beech Trucking), for 1995 and 1996, respectively. At issue is the amount that Beech Trucking may deduct with respect to per diem allowances it provided drivers that it leased from an affiliated company, and, more particularly, whether the 50-percent limitation of section 274(n) applies to the total amount of the per diem payments. Subsumed in these issues is the question of whether the section 274(n) limitation applies to Beech Trucking as the recipient of the services of the leased drivers.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue; all Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate herein by this reference.

Beech Trucking

During the years at issue, Beech Trucking was an S corporation within the meaning of section 1361(a)(1). Arthur Beech (petitioner) was the tax matters person. When the petition for readjustment was filed, Beech Trucking had its principal office in North Little Rock, Arkansas.

During the years at issue, Beech Trucking had six shareholders. As of yearend 1996, their ownership percentages were as follows:[1]

| Shareholder | Ownership percentage |
| --- | --- |
| Arthur Beech | 55.333 |
| Ed Harvey | 26.000 |
| Ralph Bradbury | 16.667 |
| Diane Miller | .667 |
| James Willbanks | .667 |
| Warren Garrison | .667 |

Petitioner was president of Beech Trucking, Ed Harvey (Harvey) was vice president, and Ralph Bradbury was secretary-treasurer.

Beech Trucking operated as an irregular-route, common carrier transporting general commodities within the midwestern and southern United States. During 1995 and 1996, it had one terminal in Little Rock, Arkansas, and another in Nashville, Tennessee. During 1995 and 1996, Beech Trucking owned and

---

[1] The record suggests that there may have been minor fluctuations in the ownership percentages of these six shareholders during the course of the years at issue. Any such fluctuations are immaterial to the results reached herein.

operated between 100 and 125 trucks, all of which were purchased used and with high mileage.

Beech Trucking drivers were dispatched on both long and short hauls.  On a long haul (typically over 500 miles), the driver would typically leave the Beech Trucking terminal on Sunday afternoon and be gone for about five nights before returning to the terminal.  On a short haul, the driver might return the same day.

Almost every Beech Trucking truck had a sleeper cab (a small area behind the driver's compartment with a bunk for sleeping). When a trip required an overnight stay, the driver might either sleep in the sleeper cab or arrange other lodging, which might or might not be in a motel.  Parking overnight at a truck stop typically would cost $5 to $10.  Showering at a truck stop typically would cost $5 to $7.

Arkansas Trucking Service

Beech Trucking leased its drivers from a company known as Arkansas Trucking Service (ATS).[2]  Harvey owned ATS, and petitioner, Arthur Beech, who was an employee of ATS, acted as its sales and operations manager.

---

[2] The record does not contain the leasing agreement between Beech Trucking and ATS or otherwise reveal its precise terms. Testimony elicited at trial suggests vaguely that ATS also provided drivers to companies other than Beech Trucking, but the record does not reveal the identities or ownership of any such other companies.

ATS employees hired the drivers and provided them orientation. Drivers who were hired to drive for Beech Trucking signed employment agreements, wherein they agreed they would drive equipment owned by Beech Trucking but would be the employees of ATS and would be paid by ATS. Petitioner had final authority to fire drivers who were hired to drive for Beech Trucking.

ATS maintained all payroll records for the Beech Trucking drivers and issued their payroll checks, as well as their Forms W-2, Wage and Tax Statement. ATS paid workers' compensation insurance for the drivers, who were also eligible to participate in a section 401(k) plan maintained by ATS.

Each week, ATS would bill Beech Trucking for all the drivers' expenses that ATS paid out, and Beech Trucking would write a check to ATS for the total payroll (including expense reimbursements), in addition to a service fee of undisclosed amount.

Drivers' Compensation and Per Diem Payments

On long hauls, Beech Trucking drivers were paid at a specified rate for each mile dispatched, as determined by ATS employees using the Rand McNally Mileage Maker, a guide indicating mileage between selected points. During the years at issue, the drivers were paid between 24 and 26 cents per mile. Of this amount, 6.5 cents was designated as a per diem travel

allowance (the per diem allowance).[3]  Short-haul drivers were paid a flat weekly salary, in addition to the 6.5 cents per mile per diem allowance.  The total per diem allowances, so calculated, were included in the drivers' paychecks issued by ATS and were listed on the corresponding check stubs under the category of current deductions and reimbursements, separate from amounts listed as earnings.  The drivers were not required to turn in receipts to receive the per diem allowances or otherwise to account for the manner in which they spent the allowances.

Per diem payments to the Beech Trucking drivers totaled $839,169 and $956,261 for 1995 and 1996, respectively.

Expense Reimbursements

The drivers' paychecks included, in addition to the amounts previously described, expense reimbursements.  The Beech Trucking drivers were reimbursed $25 per day for "layovers" when they were detained for at least 24 hours waiting for a load or waiting for a truck to be repaired; otherwise, they were not separately reimbursed for lodging expenses, overnight parking, or showers. The drivers were reimbursed for such items as tolls, "lumpers" (charges for loading and unloading trucks), scales expenses, truck repairs, and similar items.  The drivers turned in their

---

[3] The record is silent as to how this per diem rate of 6.5 cents per mile was derived.  Beech Trucking maintained no written plan to govern per diem allowances or other reimbursements.  The record does not indicate whether ATS maintained any such written plan.

logs, receipts, bills of lading, and such to ATS, which used these materials to determine expense reimbursements.

Beech Trucking's 1995 and 1996 Tax Returns

On its Forms 1120S, U.S. Income Tax Return for an S Corporation, for the years at issue, Beech Trucking deducted (as part of "Other deductions") driver-related expenses including wages, per diem allowances, group insurance, workers' compensation, tolls/scales, "motels and layovers", and "hiring cost--drivers". The amounts deducted as per diem payments were $671,695 and $765,009, for 1995 and 1996, respectively. These claimed per diem amounts represent 80 percent of the actual per diem payments made to the drivers.[4]

Respondent's Determination

Respondent commenced the examination of Beech Trucking's 1995 and 1996 Forms 1120 on May 13 and September 30, 1997, respectively. In the FSAA, issued July 23, 1999, respondent determined that under section 274(n) Beech Trucking was entitled to deduct only 50 percent of the total per diem payments. Respondent determined that Beech Trucking had overstated its deductions with respect to the per diem payments by $251,885 and $286,878 for 1995 and 1996, respectively.

---

[4] To arrive at the 80-percent claimed deduction, Beech Trucking applied the sec. 274(n) 50-percent limitation to 40 percent of the total per diem amounts paid during 1995 and 1996 and deducted the remaining 60 percent in full.

OPINION

Section 274(n) generally allows a taxpayer to deduct only 50 percent of the amount that otherwise would qualify as an allowable deduction for meals or business entertainment. The issue is whether this 50-percent limitation applies to the full amount of per diem allowances paid with respect to the Beech Trucking drivers, as respondent contends. For the reasons discussed below, we agree with respondent.

A. Statutory Framework

Section 162 allows a deduction for all ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. Section 162 enumerates certain types of deductible expenses, including "a reasonable allowance for salaries or other compensation for personal services actually rendered", sec. 162(a)(1), and "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business", sec. 162(a)(2).

Section 274(d) generally disallows any deduction under section 162 for, among other things, "any traveling expense (including meals and lodging while away from home)", unless the taxpayer complies with stringent substantiation requirements as to the amount, time and place, and business purpose of the expense. Sec. 274(d)(1). Section 274(d) authorizes the Secretary to provide by regulations that some or all of these

substantiation requirements "shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations."

Under section 274(n), the amount allowable as a deduction for "any expense for food or beverages" is generally limited to 50 percent of the amount of the expense that would otherwise be allowable.  Sec. 274(n)(1)(A).

B.    The Revenue Procedures

Under the applicable section 274(d) regulations, the Commissioner is authorized to prescribe rules in pronouncements of general applicability under which certain types of expense allowances, including per diem allowances for ordinary and necessary expenses of traveling away from home, will be regarded as satisfying the substantiation requirements of section 274(d). Sec. 1.274(d)-1, Income Tax Regs.; see also sec. 1.274-5T(j), Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985). For purposes of these regulations, Rev. Proc. 94-77, 1994-2 C.B. 825, and Rev. Proc. 96-28, 1996-1 C.B. 686 (hereinafter referred to collectively as the Revenue Procedures), authorize various nonmandatory methods that taxpayers may elect to use, in lieu of substantiating actual expenses, for deemed substantiation of employee lodging, meal, and incidental expenses incurred while

traveling away from home.[5]  Under one of the methods authorized

by the Revenue Procedures, an employee's expenses for lodging,

meal, and incidental expenses while traveling away from home will

be deemed substantiated when "a payor (the employer, its agent,

or a third party) provides a per diem allowance[6] under a

---

[5] Rev. Proc. 94-77, 1994-2 C.B. 825, is effective for per diem allowances paid on or after Jan. 1, 1995.  Rev. Proc. 96-28, 1996-1 C. B. 686, superseded Rev. Proc. 94-77, supra, for per diem allowances paid on or after Apr. 1, 1996.  Rev. Proc. 96-28, supra, restates verbatim the relevant sections of Rev. Proc. 94-77, supra.  Subsequent citations to provisions of Prev. Proc. 96-28, supra, will also refer to identical provisions of superseded Rev. Proc. 94-77, supra.

[6] Rev. Proc. 96-28, sec. 3.01, 1996-1 C.B. at 687, defines a "per diem allowance" as:

    a payment under a reimbursement or other expense
    allowance arrangement that meets the requirements
    specified in § 1.62-2(c)(1) and that is:

        (1)  paid with respect to ordinary and
             necessary business expenses incurred, or
             which the payor reasonably anticipates
             will be incurred, by an employee for
             lodging, meal, and/or incidental
             expenses for travel away from home in
             connection with the performance of
             services as an employee of the employer,

        (2)  reasonably calculated not to exceed
             the amount of the expenses or the
             anticipated expenses, and

        (3)  paid at the applicable Federal per diem
             rate, a flat rate or stated schedule, or
             in accordance with any other Service-
             specified rate or schedule.

reimbursement or other expense allowance arrangement to pay for such expenses."[7]  Rev. Proc. 96-28, sec. 1, 1996-1 C.B. at 686.

Under the Revenue Procedures, if a per diem allowance includes reimbursement for lodging, in addition to meal and incidental expenses (M&IE), the amount of expenses deemed substantiated each day is the lesser of the per diem allowance for the day or the Federal per diem rate for the locality of travel for the day.[8]  Rev. Proc. 96-28, sec. 4.01, 1996-1 C.B. at 687.  If the per diem allowance includes reimbursement only for M&IE (and not for lodging), the amount of expenses deemed substantiated each day is the lesser of the per diem allowance for the day or the Federal M&IE rate.  Rev. Proc. 96-28, sec.

_____

[7] Neither sec. 274(d) nor the regulations thereunder nor the applicable revenue procedures explicitly refer to the substantiation requirements that apply to the employer or payor that seeks to deduct payments of travel-expense reimbursements. Under sec. 274(d), however, the "taxpayer" must meet the stringent substantiation requirements to be entitled to a deduction under sec. 162 for any travel expense.  The parties do not disagree that the substantiation methods authorized under Rev. Proc. 94-77, supra, and Rev. Proc. 96-28, supra, apply to petitioner, as payor of the per diem allowances, in determining Beech Trucking's compliance with the sec. 274(d) substantiation requirements.

[8] For this purpose, the Federal per diem rate is the sum of the Federal lodging expense rate and the Federal meal and incidental expense (M&IE) rate.  Rev. Proc. 96-28, sec. 3.02, 1996-1 C.B. at 687.  The Federal M&IE rate represents the daily amount that the Government pays to its traveling employees to reimburse them for breakfast, lunch, dinner, and incidental expenses.  Johnson v. Commissioner, 115 T.C. 210, 227 (2000) (citing 41 C.F.R. sec. 301-7.2(a)(2) (1994 & 1996)).

4.02, 1996-1 C.B. at 688.[9]  For this purpose, a per diem
allowance is treated as paid only for M&IE in various specified
circumstances, including where the allowance is computed on a
basis similar to that used in computing the employee's wages or
other compensation (e.g., the number of hours worked, miles
traveled, or pieces produced).[10]  Rev. Proc. 96-28, sec. 4.02,
1996-1 C.B. at 688.

The Revenue Procedures contain special rules for applying
the section 274(n) 50-percent limitation to per diem allowances.
Specifically, under the Revenue Procedures, if a per diem is paid
only for M&IE, an amount equal to the lesser of the per diem
allowance for each calendar day or the Federal M&IE rate is

---

[9] Under special rules for the transportation industry
(including the trucking industry), a taxpayer is permitted to
treat $32 as the Federal M&IE rate for all localities of travel
in the continental United States.  Rev. Proc. 96-28, sec.
4.04(2), 1996-1 C.B. at 688.

[10] Sec. 4.02 of the Revenue Procedures provides that a per
diem allowance is treated as paid only for M&IE if:

    (1) the payor pays the employee for actual expenses for
        lodging,
    (2) the payor provides the lodging in kind,
    (3) the payor pays the actual expenses for lodging
        directly to the provider of the lodging,
    (4) the payor does not have a reasonable belief that
        lodging expenses were or will be incurred by the
        employee, or
    (5) the allowance is computed on a basis similar to
        that used in computing the employee's wages or
        other compensation (e.g., the number of hours
        worked, miles traveled, or pieces produced).

treated as an expense for food and beverages (and thus subject to the section 274(n) 50-percent limitation). Rev. Proc. 96-28, sec. 6.05, 1996-1 C.B. at 691. If the per diem allowance is paid for lodging as well as M&IE, the payor must treat an amount equal to the Federal M&IE rate as an expense for food and beverages. For this purpose, when a per diem for lodging and M&IE is paid at a rate that is less that the Federal per diem rate, the payor may treat an amount equal to 40 percent of the per diem allowance as the Federal M&IE rate. Id.

C.  Application of the Revenue Procedures

On its tax returns for the years at issue, Beech Trucking claimed deductions for the per diem payments on the basis of the last-described rule of the Revenue Procedures; i.e., it treated 40 percent of the per diem payments as being for food and beverages and thus subject to the section 274(n) 50-percent limitation and deducted the remaining 60 percent in full (resulting in a claimed deduction of 80 percent of the total per diem payments). See supra note 4.

Respondent does not dispute that the Revenue Procedures apply to this case; that the per diem payments at issue here constitute "per diem allowances" within the meaning of the Revenue Procedures; that the per diem payments are ordinary and necessary business expenses of Beech Trucking, within the meaning of section 162; that these expenses are deemed to be substantiated under the Revenue Procedures; or that they are

deductible to the extent that they are not limited by the 50-percent limitation of section 274(n).[11]  Respondent contends, however, that Beech Trucking is not entitled to the claimed treatment because under the Revenue Procedures the per diem payments are treated as being made only for M&IE and not for lodging.  Accordingly, respondent contends, under section 6.05 of the Revenue Procedures, the per diem payments are treated as being solely for food and beverages and thus fully subject to the 50-percent limitation of section 274(n).  We agree.

It is undisputed that the per diem allowances are computed on the same basis as the drivers' wages; i.e., on the basis of miles dispatched according to the Rand McNally Mileage Maker. Hence, section 4.02 of the Revenue Procedures treats the per diem allowances as being paid only for M&IE.[12]  Under section 4.02 of

---

[11] It appears that some of the per diem payments were made with respect to trips that involved no overnight travel. Respondent does not dispute, however, that the Revenue Procedures, which by their terms apply with respect to expenses incurred by an employee "while traveling away from home", Rev. Proc. 96-28, sec. 1, 1996-1 C.B. at 686, apply to all the per diem payments at issue here.  Consequently, we give no further consideration to this issue.  Moreover, the parties have not raised, and we do not reach, any issue as to whether in these circumstances the deductibility of the per diem allowances is constrained by sec. 162(a)(2).  Cf. UAL Corp. v. Commissioner, 117 T.C. 7 (2001).

[12] Respondent also contends that three other factors enumerated in sec. 4.02 of the Revenue Procedures require that the per diem allowances be treated as solely for M&IE.  In particular, respondent contends that Beech Trucking paid its drivers actual lodging costs, furnished its drivers lodging in kind, and had no reasonable belief that its drivers incurred

(continued...)

the Revenue Procedures, the expenses covered by the per diem payments are deemed substantiated in an amount equal to the lesser of the per diem allowance for the day or the Federal M&IE rate.  See Rev. Proc. 96-28, sec. 4.02, 1996-1 C.B. at 688. Respondent does not dispute that under the Revenue Procedures, petitioner is deemed to have substantiated the subject expenses in an amount equal to the full amount of the per diem payments. Thus, respondent has effectively conceded that the subject per diem allowances are less than the Federal M&IE rate.

Under section 6.05 of the Revenue Procedures, because the per diem allowances are deemed paid only for M&IE, an amount equal to the lesser of the per diem allowance or the Federal M&IE rate is treated as an expense for food and beverages and thus subject to the limitations of section 274(n).  As just discussed, respondent has effectively conceded that the per diem allowances at issue here are less than the Federal M&IE rate--a concession to which petitioner must accede if the subject expenses are to be deemed fully substantiated under the Revenue Procedures.

---

[12](...continued)
lodging expenses.  Petitioner disputes respondent's factual premises.  Because the test in sec. 4.02 of the Revenue Procedures is disjunctive, failure to meet any one of the five enumerated requirements causes the per diem allowances to be considered as paid only for M&IE.  Because it is undisputed that the requirement described in the text above has been met, we need not decide whether any of the additional requirements have been met.

(Otherwise, as discussed more fully infra, petitioner has not independently substantiated, and thus is entitled to no deduction for, any of the subject expenses in excess of those deemed to be substantiated under the Revenue Procedures.)[13]  Accordingly, under section 6.05 of the Revenue Procedures, the full amount of the per diem payments is treated as being for food and beverages and thus subject to the 50-percent limitation of section 274(n).

D.  Petitioner's Contentions

Petitioner argues that because Beech Trucking leased its drivers from ATS, the section 274(n) limitation is inapplicable to Beech Trucking.  Petitioner also argues that the Revenue Procedures are invalid insofar as they operate to characterize the Beech Trucking per diem payments as being solely for M&IE expenses (and not for lodging) and to apply the section 274(n) limitation to nonmeal expenses that were covered by the per diem

---

[13] Moreover, as discussed infra, the evidence indicates that Beech Trucking's per diem payments were in fact less than the Federal M&IE rate.

payments.[14]  For the reasons described below, we disagree with each of these arguments.

1.  Employment Status of the Beech Trucking Drivers

Petitioner argues that the Beech Trucking drivers were employed by ATS and not by Beech Trucking.  Consequently, petitioner argues, the section 274(n) limitation should apply only to ATS and not to Beech Trucking.[15]  In support of this

---

[14] Petitioner (who has consistently maintained throughout these proceedings that the truck drivers were not Beech Trucking's employees) has not raised and we do not reach any issue as to whether the per diem payments should be deductible under sec. 162(a)(1) as personal service compensation paid by Beech Trucking to the drivers.  In UAL Corp. v. Commissioner, 117 T.C. 7 (2001), the taxpayer, pursuant to a collective bargaining agreement with its employees, paid its pilots and flight attendants per diem allowances at a specified rate for each hour the employees were on duty or on flight assignment.  This Court held that the taxpayer was entitled to deduct the per diem allowances as personal service compensation under sec. 162(a)(1), finding that the taxpayer would not have paid the per diem allowances to its employees but for the existence of a bona fide employer/employee relationship and the need to pay the allowances in order to secure the employees' services.  Id. at 10.  Noting, among other things, the taxpayer's negotiation of the per diem allowances as part of its employees' compensation package, this Court found as a fact that in making the per diem payments, the taxpayer intended to compensate the employees for their personal services.  Id. at 11.

In the instant case, the record does not establish Beech Trucking's intent in making the per diem payments or the manner in which the per diem allowances were determined or by whom. Moreover, unlike the per diem allowances at issue in UAL Corp. v. Commissioner, supra, the per diem allowances at issue here were computed by reference to miles dispatched rather than according to hours on duty or on travel assignment.

[15] Petitioner's argument is inconsistent with Beech Trucking's treatment of the per diem payments on its tax returns,
(continued...)

argument, petitioner cites section 274(e)(3) and the regulations thereunder.

We construe petitioner's argument as being predicated upon section 274(n)(2)(A), which provides that the section 274(n) limitation does not apply with respect to any expense described in (among other sections) section 274(e)(3).

Section 274(e)(3) provides that certain reimbursed expenses are not subject to section 274(a), which generally disallows deductions for expenses with respect to entertainment activities and facilities.  Specifically, section 274(e)(3) provides that section 274(a) shall not apply to:

> Expenses paid or incurred by the taxpayer, in connection with the performance by him of services for another person (whether or not such other person is his employer), under a reimbursement or other expense allowance arrangement with such other person, but this paragraph shall apply--
>
> > (A) where the services are performed for an employer, only if the employer has not treated such expenses in the manner provided in paragraph (2), or
> >
> > (B) where the services are performed for a person other than an employer, only if the taxpayer accounts (to the extent provided by subsection (d)) to such person.

---

[15](...continued)
wherein it treated 40 percent of the per diem payments as being subject to the sec. 274(n) limitation.  Moreover, petitioner's argument is inconsistent with the premise of the prayer for relief in this litigation, wherein petitioner has not contended that Beech Trucking is entitled to greater deductions than it claimed on its tax returns on the basis of its application of the sec. 274(n) limitation.

The purpose of this exception in section 274(e)(3) is "to prevent the double disallowance of a single expenditure, once to the employee or practitioner, etc., and a second time to the employer or client, etc."  H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 429.  The regulations under section 274(e)(3) provide as follows:

(iv) <u>Reimbursed entertainment expenses--(a)</u> <u>Introductory</u>.  In the case of any expenditure for entertainment paid or incurred by one person in connection with the performance by him of services for another person (whether or not such other person is an employer) under a reimbursement or other expense allowance arrangement, the limitations on allowability of deductions provided for in paragraphs (a) through (e) of this section shall be applied only once, either (1) to the person who makes the expenditure or (2) to the person who actually bears the expense, but not to both. * * *

(<u>b</u>) <u>Reimbursement arrangements between employee</u> <u>and employer</u>.  In the case of an expenditure for entertainment paid or incurred by an employee under a reimbursement or other expense allowance arrangement with his employer, the limitations on deductions provided for in paragraphs (a) through (e) of this section shall not apply--

(<u>1</u>) <u>Employees</u>.  To the employee except to the extent his employer has treated the expenditure on the employer's income tax return as originally filed as compensation paid to the employee and as wages to such employee for purposes of withholding under chapter 24 (relating to collection of income tax at source on wages).

(<u>2</u>) <u>Employers</u>.  To the employer to the extent he has treated the expenditure as compensation and wages paid to an employee in the manner provided in (<u>b</u>)(<u>1</u>) of this subdivision. [Sec. 1.274-2(f)(2)(iv)(<u>a</u>) and (<u>b</u>), Income Tax Regs.]

As previously noted, the principles reflected in section 274(e)(3) and the above-quoted regulations apply for purposes of section 274(n) by virtue of the cross-reference to section 274(e)(3) contained in section 274(n)(2)(A). Accordingly, with respect to meal and entertainment expenses that an employee pays or incurs and that are reimbursed by the employer, the section 274(n) limitation applies either to the employee (as the "person who makes the expenditure") or to the employer (as the "person who actually bears the expense"). Sec. 1.274-2(f)(2)(iv)(a), Income Tax Regs.

In the instant case, with respect to the per diem payments, the parties agree that the section 274(n) limitation does not apply to the employees (i.e., the Beech Trucking drivers), since the per diem payments were excluded from their wages. The parties agree that the section 274(n) limitation instead applies to the drivers' employer. Petitioner argues, however, that ATS, not Beech Trucking, was the drivers' employer and that section 274(n) thus does not apply to Beech Trucking.

Neither section 274(e)(3) nor the regulations thereunder nor section 274(n) defines "employer" or "employee". Consequently, we look to common law concepts to determine the existence of an employer-employee relationship. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-324 (1992); Burrey v. Pac. Gas & Elec. Co., 159 F.3d 388, 393 (9th Cir. 1998); Alford v. United States,

116 F.3d 334, 336 (8th Cir. 1997); MedChem (P.R.), Inc. v. Commissioner, 116 T.C. 308, 341 (2001); Profl. & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 231 (1987), affd. 862 F.2d 751 (9th Cir. 1988). Among the factors to which the courts have looked to determine the existence of a common law employment relationship are the following: Control exercised over the details of the work; discretion exercised over the time and duration of the work; the source of the instrumentalities and tools of the work; the permanency of the relationship; the right to assign additional projects to the hired party; the right to discharge; the method of payment; the provision of employee benefits; the opportunity for profit and loss; and whether the type of work is part of the hiring party's regular business. Alford v. United States, supra at 337-338; Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. 60 F.3d 1104 (4th Cir. 1995); Profl. & Exec. Leasing, Inc. v. Commissioner, supra at 232; see also sec. 31.3401(c)-1(b), Employment Tax Regs. Normally, control is the most significant factor in determining the nature of a working relationship. Weber v. Commissioner, supra at 387, 390.

Although the courts normally employ these common law factors to determine whether a person in a two-party relationship is an employee or an independent contractor, these factors are equally applicable in determining the identity of the common law employer

in three-party employment situations.  Vizcaino v. U.S. Dist. Ct., 173 F.3d 713, 723 (9th Cir. 1999); Profl. & Exec. Leasing, Inc. v. Commissioner, supra at 232 (applying the common law factors to determine that the taxpayer, who leased management and professional personnel to commercial businesses and professional practices, was not the common law employer of the personnel for purposes of the "exclusive benefit" rule of section 401(a)(2) (citing Bartels v. Birmingham, 332 U.S. 126, 132 (1947))).

The analysis of common law employment status is "extraordinarily fact intensive".  Alford v. United States, supra at 337.  In the instant case, the evidentiary basis for analyzing the relevant common law factors is relatively sparse, owing largely to petitioner's failure to introduce in evidence or otherwise establish the precise terms of any lease agreement, employment agreement, or contract between Beech Trucking and ATS. Nor does the record contain the drivers' employment contracts. Moreover, the record does not always clearly distinguish the roles of Beech Trucking and ATS with respect to the drivers' activities.  We infer that their roles were to some degree blurred, especially taking into consideration that Harvey, who owned ATS, also owned 26 percent of Beech Trucking, and that petitioner, who was president and 55-percent owner of Beech Trucking, was an employee of ATS.

As far as we can discern from the record, Beech Trucking controlled the drivers' activities, exercising discretion over when and how long they worked.  Petitioner testified that Beech Trucking drivers were dispatched out of Beech Trucking's Little Rock terminal; that Beech Trucking tried to keep all its 100 to 125 trucks manned so as to get "our drivers home most weekends"; and that on a typical week, a Beech Trucking driver would leave on a Sunday afternoon and "we would try to get him out as far as we could in the early part of the week, and then start working him back toward the house."[16]  The record is silent as to any control that ATS might have exercised over the Beech Trucking drivers' activities.

ATS hired the drivers and provided them some orientation.  On its income tax returns for the years at issue, however, Beech Trucking deducted (as part of "Other deductions") a separate item identified as "hiring cost--drivers", from which we infer that Beech Trucking reimbursed ATS for the cost of hiring the Beech Trucking drivers.  When ATS hired the Beech Trucking drivers, they signed employment agreements wherein they agreed to be ATS

---

[16] Most of the pertinent testimony regarding the Beech Trucking drivers' activities came from petitioner.  As previously noted, petitioner was both president of Beech Trucking and an employee of ATS.  As reflected in the quotations in the text above, his testimony often employed, ambiguously, first-person plural pronouns.  On the basis of our careful review of petitioner's testimony in the context of the entire record, we conclude that the testimony described in the text is most reasonably understood to refer to petitioner's activities as president of Beech Trucking.

employees but to operate Beech Trucking equipment. A contract purporting to create an employer-employee relationship is not controlling where application of the common law factors to the facts and circumstances indicates the absence of such a relationship. Profl. & Exec. Leasing, Inc. v. Commissioner, supra at 233. Here, the employment agreements reflect at least three factors that point to Beech Trucking as the common law employer: (1) Beech Trucking provided the tools and instrumentalities of the drivers' work; (2) ATS apparently had no right to assign additional projects to the drivers, the drivers being effectively assigned to Beech Trucking; and (3) the relationship between the drivers and Beech Trucking was apparently of indefinite duration.

Petitioner had final authority to terminate the Beech Trucking drivers. He testified that "If they [the Beech Trucking drivers] were late on loads, * * * I would turn them back to Arkansas Trucking Services and tell them we couldn't use them."

Although ATS issued the drivers' weekly paychecks, paid workers' compensation, and maintained a section 401(k) plan for the drivers, Beech Trucking reimbursed ATS weekly for its expenditures, plus a service charge. As petitioner states on brief, ATS "actually made the expenditures while Beech Trucking actually would bear the cost." We infer that ATS's opportunity for profit related primarily to its bookkeeping and payroll

function, and that it had little exposure to losses associated with the Beech Trucking drivers' work activities. By contrast, it appears that Beech Trucking bore the risks associated with operating the trucking business on which it relied to generate revenues with which to make weekly payroll reimbursements to ATS.

Beech Trucking had an investment in work facilities: it operated two terminals and owned all the trucks that the drivers operated. Clearly, the drivers' work was part of the regular business of Beech Trucking. The record is silent as to whether ATS had any separate work facilities and is unclear as to the extent of any business ATS might have had apart from the services it provided Beech Trucking.

In sum, on the basis of all the evidence in the record, we conclude that Beech Trucking was the drivers' common law employer, with respect to which ATS performed principally a driver procurement and payroll service. Cf. Profl. & Exec. Leasing, Inc. v. Commissioner, 89 T.C. at 234.

Accordingly, we conclude that the section 274(n) limitation applies to Beech Trucking as the common law employer of its drivers and as the party that (as petitioner states on brief) actually bore the expense of the expenditures for which the per diem payments were made. See sec. 1.274-2(f)(2)(iv), Income Tax

Regs.[17]  This conclusion is consistent with the position taken by Beech Trucking on its tax returns for the years at issue and with the implicit premise of petitioner's prayer for relief.[18]

   2.  Validity of the Revenue Procedures

Petitioner argues that the Revenue Procedures are invalid insofar as they operate (in section 4.02) to characterize the Beech Trucking per diem payments as being solely for M&IE and (in section 6.05) to apply the section 274(n) limitations to the full amount of the per diem payments.  Petitioner does not argue that the Revenue Procedures are otherwise invalid; to the contrary, petitioner relies on section 4.01 of the Revenue Procedures for deemed substantiation of the drivers' travel expenses and on that part of section 6.05 of the Revenue Procedures that would permit Beech Trucking (absent the provision in section 4.02 which deems the per diem payments to be solely for M&IE) to treat 60 percent of the per diem payments as being reimbursements of the drivers' lodging expenses.  In effect, then, petitioner seeks to rely selectively on certain aspects of the Revenue Procedures that

---

[17] This case does not present, and we do not reach, any issue as to the proper tax treatment to ATS of the amounts that ATS paid to the Beech Trucking drivers.  The record is silent as to how ATS might have treated the payments to the Beech Trucking drivers for tax purposes.

[18] As previously indicated, in this litigation petitioner has not argued that Beech Trucking is entitled to deduct a greater amount of the per diem payments than the 80 percent it claimed on its tax returns, on the basis of its application of the sec. 274(n) limitations.

work to Beech Trucking's benefit while seeking to avoid the associated conditions that the Revenue Procedures impose.

The substantiation methods described in the Revenue Procedures and relied upon by petitioner are not mandatory. See Rev. Proc. 96-28, sec. 1, 1996-1 C.B. at 686. Beech Trucking could have used actual allowable expenses if they were properly substantiated with adequate records or other sufficient evidence. See id.; see also Johnson v. Commissioner, 115 T.C. 210, 228 (2000).[19] In that event, properly substantiated nonmeal travel expenses might have been deductible without limitation by section 274(n). Instead, Beech Trucking elected to use the deemed substantiation method provided by the Revenue Procedures. Having made this election, Beech Trucking cannot avail itself of the benefits of the Revenue Procedures without adhering to the conditions the Commissioner has imposed. See Bob Wondries Motors, Inc. v. Commissioner, 268 F.3d 1156, 1160-1161 (9th Cir. 2001) (taxpayers who elected, pursuant to a revenue procedure, to

---

[19] Moreover, Beech Trucking could have avoided the sec. 274(d) substantiation requirements, as well as the sec. 274(n) 50-percent limitation, by treating the per diem payments as compensation to the drivers. See sec. 274(e)(2) and (3), (n)(2)(A); sec. 1.274-2(f)(2)(iii) and (iv)(b), Income Tax Regs. The tradeoff would be that the per diem payments would then be includable in the drivers' gross incomes and would be subject to withholding and payment of employment taxes when paid. See sec. 1.62-2(c)(5), (h)(2)(ii), Income Tax Regs. Under this scenario, the drivers would be eligible to claim, as itemized deductions, expenses attributable to the payments included in their gross incomes, subject to the sec. 274(d) substantiation requirements and the sec. 274(n) 50-percent limitation. See sec. 1.62-2(c)(5), Income Tax Regs.

defer prepaid service income on warranty contracts were required to adhere to the revenue procedure's condition regarding the manner of accounting for insurance expenses associated with the warranty contracts), affg. <u>Toyota Town, Inc. v. Commissioner</u>, T.C. Memo. 2000-40; <u>Mulholland v. United States</u>, 28 Fed. Cl. 320, 344 (1993) (taxpayers' failure to adhere to conditions of a revenue procedure rendered them ineligible for its benefits), affd. 22 F.3d 1105 (Fed. Cir. 1994).

Petitioner argues that the complained-of conditions contained in section 4.02 of the Revenue Procedures are invalid because they conflict with certain regulations under section 62(a)(2). Petitioner also suggests that sections 4.02 and 6.05 of the Revenue Procedures, as applied to the instant case, reflect an arbitrary or unlawful exercise of respondent's authority. For the reasons discussed below, we disagree with each of these arguments.

  a. <u>Does Section 4.02 of the Revenue Procedures Conflict With the Section 62(a)(2) Regulations?</u>

As previously discussed, in certain specified circumstances, section 4.02 of the Revenue Procedures limits the amount of the employees' reimbursed travel expenses that is deemed to be substantiated to the lesser of: (1) The actual per diem allowance for the day; or (2) the amount computed at the Federal M&IE rate for the locality of travel--which rate the taxpayer may treat (for travel in the continental United States) as being $32

(hereinafter referred to as the specified Federal M&IE rate).[20]

Among the five factors enumerated in section 4.02 of the Revenue

Procedures that may trigger this consequence, the fifth factor is

the focus of the dispute here.  It requires a per diem allowance

to be treated as paid only for M&IE if "the allowance is computed

on a basis similar to that used in computing the employee's wages

or other compensation (e.g., the number of hours worked, miles

traveled, or pieces produced)."  Rev. Proc. 96-28, sec. 4.02,

1996-1 C.B. at 688.  (Hereinafter, this provision is sometimes

referred to simply as the fifth factor.)

On brief, petitioner suggests that the fifth factor is

invalid because it conflicts with certain regulations under

section 62(a)(2), regarding the treatment to employees of

reimbursed expenses under so-called accountable plans.[21]

---

[20] Under the Revenue Procedures, the Federal per diem rate for the locality of travel is the amount set forth in the Federal Travel Regulations, as contained in 41 C.F.R., ch. 301, app. A, as amended.  See Rev. Proc. 96-28, sec. 3.02, 1996-1 C.B. at 687. The Federal Travel Regulations, as in effect for the years at issue, provide various M&IE rates (ranging from $26 to $38) for over 800 specified localities in the continental United States; all other locations in the continental United States are subject to the lowest M&IE rate of $26.  See 41 C.F.R., ch. 301., app. A (1996).  As previously noted, under the simplifying convention of sec. 4.04(2) of the Revenue Procedures, a qualifying taxpayer in the transportation industry may treat $32 as the Federal M&IE rate for all localities of travel in the continental United States.

[21] Sec. 62(a)(2)(A) permits favorable tax treatment (e.g., exclusion from the employee's gross income and exemption from withholding requirements and the payment of employment tax) with respect to reimbursements of business expenses that payors make

(continued...)

Petitioner observes, correctly, that mileage-based reimbursement arrangements like those described in the fifth factor (and at issue here) are expressly recognized in section 1.62-2(d)(3)(ii), Income Tax Regs., as satisfying, in certain circumstances, the so-called business connection requirement as necessary for a reimbursement arrangement to qualify as an accountable plan.[22] Therefore, petitioner elliptically concludes, the fifth factor of section 4.02 of the Revenue Procedures conflicts with section 1.62-2(d)(3)(ii), Income Tax Regs., and is therefore invalid. Insofar as we are able to understand petitioner's argument, we disagree with it.

We perceive no conflict between section 1.62-2(d)(3)(ii), Income Tax Regs., and section 4.02 of the Revenue Procedures.

_____

[21](...continued)
to employees under so-called accountable plans.  See sec. 1.62-2(c)(4), (h), Income Tax Regs.  By contrast, reimbursement payments under nonaccountable plans must be reported as wages to the employees and are subject to withholding and employment taxes.  See sec. 1.62-2(c)(5), Income Tax Regs.

[22] For qualification as an accountable plan, one requirement (the so-called business connection requirement) is that the reimbursement arrangement must provide reimbursements only for business expenses that are allowable as deductions under I.R.C. pt. VI (secs. 161-197) and that are paid or incurred by the employee in connection with the performance of services as an employee of the employer.  Sec. 1.62-2(c)(1) and (d)(1), Income Tax Regs.  A per diem allowance arrangement that is "computed on a basis similar to that used in computing the employee's wages or other compensation (e.g., the number of hours worked, miles traveled, or pieces produced)" will meet the business connection requirement only in certain circumstances, one of which is that "a per diem allowance computed on that basis was commonly used in the industry in which the employee is employed."  Sec. 1.62-2(d)(3)(ii), Income Tax Regs.

Respondent does not dispute that Beech Trucking's mileage-based reimbursement arrangement satisfies the business connection test under the section 62(a)(2) regulations. Cf. Shotgun Delivery, Inc. v. United States, 269 F.3d 969 (9th Cir. 2001); Trucks, Inc. v. United States, 234 F.3d 1340 (11th Cir. 2000). Nor does respondent dispute that this per diem arrangement satisfies the substantiation requirements described in section 1.62-2(e), Income Tax Regs., which permits travel expenses governed by section 274(d) (as are those at issue here) to be deemed to be substantiated in accordance with rules prescribed pursuant to the authority granted by section 1.274(d)-1, Income Tax Regs., or section 1.274-5T(j), Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985); i.e., in accordance with the Revenue Procedures. To the contrary, respondent implicitly acknowledges that the reimbursed travel expenses at issue here are deemed to be substantiated under the Revenue Procedures. The only issue is how the travel expenses are to be characterized--an issue that the section 62 regulations do not explicitly address other than by cross-referencing the regulations pursuant to which the Revenue Procedures were promulgated.

### b. Are the Revenue Procedures, as Applied, Otherwise Invalid?

Petitioner also suggests more generally that respondent acted arbitrarily or unlawfully by applying in this case the

complained-of conditions contained in sections 4.02 and 6.05 of the Revenue Procedures.

As previously discussed, the application of section 4.02 of the Revenue Procedures has two essential consequences with regard to a mileage-based reimbursement arrangement like the one at issue here: (1) It imposes an upper limit on the amount of reimbursed travel expenses that are deemed to be substantiated (an amount that a qualifying transportation-industry taxpayer may treat under section 4.04(2) of the Revenue Procedures as being equal to the $32 specified Federal M&IE rate); and (2) it characterizes those reimbursed expenses as being M&IE and not lodging expenses.

Petitioner does not take issue with the reasonableness of the upper limit imposed by section 4.02 of the Revenue Procedures. To the contrary, according to petitioner's representations on brief, the amount of the upper limit so imposed (as referenced by the specified Federal M&IE rate of $32) corresponds closely to the maximum per diem payment ($32.50) that petitioner alleges would obtain under Beech Trucking's mileage-based reimbursement formula.[23] Furthermore, the evidence in the

_____

[23] Petitioner testified that Federal law prohibits drivers from driving more than 10 hours a day, and that in setting the amount of the per diem allowance, Beech Trucking relied on a rule of thumb that its drivers would drive an average of 45 to 50 miles per hour. Apparently on the basis of this testimony, petitioner states on reply brief that Beech Trucking's per diem arrangement provided a "maximum per diem base of 500 miles at 6.5

(continued...)

record indicates that Beech Trucking's mileage-based reimbursement formula, on average, yielded reimbursements significantly less than the specified Federal M&IE rate (and also less than any actual Federal M&IE rate that might otherwise be applicable).[24]  As previously discussed, we have deemed the parties to have conceded that the actual per diem payments at issue here were less than the upper limit determined by reference to the Federal M&IE rate.  Accordingly, petitioner is not

---

[23](...continued)
cents a mile, which would provide a maximum per diem allowance of $32.50."  Petitioner represents that Beech Trucking's mileage-based method of reimbursing drivers' travel expenses reflects common industry practice.

[24] Petitioner testified that the average length of a long haul for a Beech Trucking driver was about 389 miles on the outbound leg of the trip.  Petitioner also testified that Beech Trucking would try to get each trucker "out as far as we could in the early part of the week, and then start working him back toward the house."  The evidence indicates that the drivers would be gone for about five nights on a typical long haul.  Taken together, this evidence indicates that the average per diem allowance that Beech Trucking actually provided its drivers was much less than the $32.50 maximum per diem allowance that petitioner represents would obtain under the reimbursement formula, based on an assumed maximum 500 miles of driving per day.  Specifically, the average outbound trip of 389 miles would yield a per diem payment of no more than $25.29.  Assuming, as seems likely, that the return leg of the average 5-day-long haul would entail less mileage each day than the average 389 miles driven on the outbound trip, it seems likely that the average per diem payments for each of the other 4 days of such a trip would be less than $25.29.  Consequently, the evidence indicates that the average per diem payment was not only less than the $32 specified Federal M&IE rate under the Revenue Procedures, but also less than the lowest actual Federal M&IE rate ($26), and much less than the highest actual Federal M&IE rate ($38), applicable to any locality of travel under the Federal Travel Regulations.  See 41 C.F.R. ch. 301, app. A (1996).

adversely affected by the amount of the upper limit per se but only by the characterization of the reimbursed travel expenses as being for M&IE.

In this latter regard, we do not believe that section 4.02 of the Revenue Procedures reflects an arbitrary or unlawful exercise of the Commissioner's authority in treating a maximum per diem allowance that is approximately equal to the Federal M&IE rate as reimbursing no more than M&IE expenses, particularly where, as here, actual per diem reimbursements are less than the amount computed at the Federal M&IE rate.[25]

Similarly, we do not believe that the complained-of conditions contained in section 6.05 of the Revenue Procedures, as applied to this case, are arbitrary or unlawful.[26]  The effect of section 6.05 of the Revenue Procedures, as applied here, is effectively to treat the subject per diem payments as covering solely meal expenses in circumstances where, as just discussed, the reimbursements were less than the amount computed at the Federal M&IE rates and, in all likelihood, less than the amount computed by reference to the portion of the Federal M&IE rate

---

[25] This case does not present, and we do not consider, any issue as to whether the complained-of conditions of sec. 4.02 of the Revenue Procedures are valid as applied to per diem payments that exceed the Federal M&IE rate.

[26] This case does not present, and we do not consider, any issue as to whether this aspect of sec. 6.05 of the Revenue Procedures is valid as applied to per diem payments that approximate or exceed the Federal M&IE rate.

that is for meals only.[27]  In such circumstances, it is not unreasonable for the Revenue Procedures to treat the per diem payments as covering only meal expenses.

Petitioner contends that the Beech Trucking per diem payments covered not only the drivers' meals but also their lodging expenses and incidental expenses, such as the cost of showers, laundry, overnight parking, and local transportation. Assuming that the drivers might have incurred such travel expenses from time to time, it does not follow that the per diem payments necessarily reimbursed them for such travel expenses. To the contrary, it appears that the subject per diem allowances were insufficient to reimburse the drivers for all such expenses. Because the Revenue Procedures permit deemed substantiation in lieu of actual substantiation of the employees' travel expenses, the actual amounts and character of each employee's travel expenses are unknown and probably unknowable.[28]  In these circumstances, it is reasonable and probably necessary for the Commissioner to adopt conventions (such as those contained in

---

[27] The portion of the Federal M&IE rate that is attributable to incidental expenses incurred in all continental United States locations is $2.  41 C.F.R. sec. 301-7.12(a)(2)(i) (1994 & 1996).

[28] Indeed, it is conceivable that some drivers might subsist so Spartanly on the road as to spend very little of their per diem payments, pocketing the unspent payments as untaxed extra compensation.  After all, there is no requirement that employees spend per diem allowances such as those at issue here for any particular purpose or that they remit to the employer any unspent per diem allowance.

sections 4.02 and 6.05 of the Revenue Procedures) governing the nature of the deemed-substantiated expenses, where that issue has independent significance under the tax laws.

As pronouncements of general applicability, the Revenue Procedures cannot be expected to mirror perfectly the manifold circumstances of all taxpayers and their traveling employees or of any particular taxpayer's traveling employees. As elective procedures meant to mitigate what might otherwise be onerous substantiation burdens for payors of per diem allowances, the Revenue Procedures accomplish, we believe, at least rough justice. Giving due regard to the highly detailed nature of the statutory and regulatory scheme involved here, to the specialized experience and information presumably available to the Commissioner, and to the value of uniformity in administering the national tax laws, we are unpersuaded that the complained-of conditions imposed by section 4.02 or section 6.05 of the Revenue Procedures, as applied in the instant case, are arbitrary or unlawful. See United States v. Mead Corp., 533 U.S. 218, 234-235 (2000).

In any event, even if we were to agree with petitioner that the complained-of conditions imposed by the Revenue Procedures are invalid (which we do not), we would not reach a different result in this case. The burden of proof is on petitioner. Rule

142(a).[29]  Having relied exclusively upon the deemed

substantiation methods provided in the Revenue Procedures,

petitioner has offered no independent substantiation of the

amounts of lodging or incidental expenses that the Beech Trucking

drivers might have incurred, or otherwise established any

reasonable basis for allocating the per diem payments to meals,

incidentals, and lodging expenses incurred by the drivers.[30]

Accordingly, petitioner has failed to show that respondent's

determination was in error.  Cf. United States v. St. Louis-S.F.

Ry., 537 F.2d 312 (8th Cir. 1976) (taxpayer failed to rebut

Commissioner's valuation of reusable rail as determined on the

basis of an elective method provided by a revenue procedure);

Kasey v. Commissioner, 54 T.C. 1642, 1650 (1970) (although an

automobile allowance of 10 cents per mile under an elective

---

[29] In certain circumstances, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, sec. 7491 places the burden of proof on the Commissioner.  See sec. 7491(a); Rule 142(a)(2).  Sec. 7491 is effective with respect to court proceedings arising in connection with examinations commencing after July 22, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(2), 112 Stat. 685, 726.  Here, respondent's examinations of Beech Trucking's 1995 and 1996 Federal income tax returns commenced before July 23, 1998.  Accordingly, sec. 7491 has no application to this case.

[30] In particular, the record does not establish the number of days per trip that the drivers would normally pay for separate lodging or for incidentals such as showers, laundry, local transportation, or overnight parking.  As previously noted, it appears that at least some of the trips for which Beech Trucking paid per diem allowances involved no overnight travel.

revenue procedure might have been arbitrary, the taxpayer failed
to substantiate any higher amount of actual automobile expenses
and so was properly granted a deduction based on the revenue
procedure), affd. 457 F.2d 369 (9th Cir. 1972).

Petitioner cites Johnson v. Commissioner, 115 T.C. 210
(2000), to support his contention that section 274(n) is
inapplicable to the extent the per diem allowances represent
reimbursements for incidental expenses.[31]  Petitioner's reliance
on Johnson is misplaced.  In Johnson, the taxpayer, a merchant
marine, incurred and paid incidental travel expenses that were
not reimbursed by his employer.  The issue was whether, pursuant
to Rev. Proc. 96-28, 1996-1 C.B. 686, the taxpayer could deduct
these incidental expenses using the full Federal per diem rates.
Resolution of this issue in Johnson turned upon the proper
interpretation of section 4.03 of Rev. Proc. 96-28, 1996-1 C.B.
at 688, which provides an optional method whereby employees and
self-employed individuals may deduct meal and incidental expenses
incurred for travel away from home by using an amount computed at

---

[31] Neither in the petition nor elsewhere in this litigation
has petitioner expressly sought any relief with respect to Beech
Trucking's claimed deduction for its reimbursements of any
incidental travel expenses of its drivers.  As previously
discussed, on its Federal income tax return, Beech Trucking
deducted the per diem payments under the rule of sec. 6.05 of the
Revenue Procedures, which effectively treats 60 percent of
certain per diem payments as being for lodging (and thus not
subject to the sec. 274(n) limitation) and the other 40 percent
(which would include any incidental travel expenses) as being
subject to the sec. 274(n) limitation.

the Federal M&IE rate for the locality of travel.  This Court held that under section 4.03 of Rev. Proc. 96-28, supra, the taxpayer was entitled to a portion of the claimed deductions, as limited by applying the incidental expense portions of the applicable Federal M&IE rates.  Johnson v. Commissioner, supra at 216-217.

Unlike the case at hand, Johnson did not address the payment of a per diem allowance, the tax treatment of the payment to the payor, the deemed substantiation of such a per diem payment under the applicable Revenue Procedures, the validity or application of section 4.02 or 6.05 of the Revenue Procedures, or the application of section 274(n) to such a per diem payment.  In Johnson, the taxpayer-employee incurred no meals or lodging expenses.  Consequently, the section 274(n) limitation was inapplicable.[32]

In the instant case, by contrast, petitioner seeks to deduct per diem payments intended to cover, without differentiation, all otherwise unreimbursed travel expenses, including meals.  To the extent that the per diem allowances represent reimbursements of

---

[32] In Johnson v. Commissioner, 115 T.C. at 215-216, the taxpayer deducted incidental expenses, as determined using the full Federal per diem rate, after applying the 50-percent limitation of sec. 274(n).  In a footnote, the Court indicated that the sec. 274(n) 50-percent disallowance did not apply to the taxpayer's deduction at this rate.  Id. at 227 n.10.  The Court did not expressly address the application of those portions of the applicable revenue procedure that pertain to the application of sec. 274(n).

meal expenses, the section 274(n) limitations are applicable, absent some statutory exception.[33] Petitioner has not attempted, however, to substantiate the drivers' travel expenses in any manner that would provide an evidentiary basis for allocating the per diem payments between meal expenses and other reimbursed travel expenses. Instead, petitioner has elected to rely upon the deemed substantiation methods made available in the Revenue Procedures, which provide for no such allocation.

Accordingly, we sustain respondent's determination. Arguments raised by the parties and not discussed herein are without merit or irrelevant. To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[33] As previously discussed, we disagree with petitioner's argument that the exception contained in sec. 274(n)(2)(A) affords petitioner any relief. Petitioner does not contend that any other exceptions contained in sec. 274(n)(2) apply.