**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3287

_____

| | | |
|---|---|---|
| James T. Alford; Freda Alford, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Arkansas. |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 18, 1997
Filed: June 20, 1997

_____

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

James P. and Freda Alford appeal from the decision of the District Court granting summary judgment in favor of the United States on the Alfords' claim to recover income tax and interest paid to the Internal Revenue Service (IRS). We reverse and remand.

The Alfords, husband and wife, timely filed joint federal income tax returns for the tax years 1986, 1987, and 1988. The IRS assessed deficiencies against the taxpayers for those three years, which they paid with interest. The Alfords then filed with the IRS claims for refunds of the amounts paid, but their claims were disallowed.

In June 1994, the Alfords filed a complaint in the District Court pursuant to I.R.C. § 7422 (1994) seeking, among other things, a refund of the alleged deficiencies and the interest paid. The parties filed a joint stipulation of issues and facts and cross-motions for summary judgment. In June 1996, the court granted the government's summary judgment motion as to all but one issue, on which the Alfords received summary judgment. The Alfords appeal.

Although there were several issues decided by the District Court, only one issue has been appealed: whether during tax years 1986, 1987, and 1988 James Alford was an employee within the meaning of the relevant provisions of the tax code.[1] On their federal income tax returns for those years, the taxpayers claimed that Alford was not an employee but an independent contractor. But the IRS determined that he was an employee and recalculated the Alfords' tax liability. If he was an independent contractor, then he was entitled to deduct the full amount of his business expenses from his earned income for those years. See I.R.C. § 62(a) (1) (1994). If on the other hand he was an employee, then his miscellaneous itemized deductions, including his business expenses, would "be allowed only to the extent that the aggregate of [miscellaneous itemized] deductions exceeds 2 percent of adjusted gross income." Id. § 67(a) (1994). The assessed deficiencies at issue on appeal are the result of the difference in the amount of business expenses allowed as deductions under these two calculations.

---

[1]Upon reading the Alfords' brief, it appears they are challenging only one year's assessment of tax deficiencies. See Brief of Appellants at 2-3 ("In the underlying action, the Alfords sought a refund of certain income taxes and interest erroneously and illegally assessed against and collected from them by the [IRS]. The subject taxes relate to the Alfords' joint income tax return filed for tax year 1986. . . . The dispute between the parties stems from the Alfords' assertion that Rev. Alford was self-employed during 1986.") (citations and footnote omitted). Nevertheless, the Alfords' notice of appeal makes it clear that they are seeking refunds for all three tax years at issue.

We review a decision to grant summary judgment de novo to determine whether there are any genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Because the parties here have stipulated to the relevant facts, the only question is whether, as a matter of law, James Alford was an employee or an independent contractor within the meaning of the applicable provisions of the tax code during the years in question.[2]

The parties agree that, in order to determine whether Alford was an employee, we look to the common law of agency, as the tax code does not define "employee" for these purposes. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992) (applying common law agency rules to question of whether individual was employee under Employee Retirement Income Security Act (ERISA)). The ultimate question of whether Alford is an employee or an independent contractor is one of law, and is answered by looking at the facts and applying the common law agency test. See Birchem v. Knights of Columbus, No. 96-2294, slip op. at 5 (8th Cir. May 30, 1997) ("We review the ultimate question of employment status de novo.") (Americans with Disabilities Act case); Short v. Central States, S.E. & S.W. Areas Pension Fund, 729 F.2d 567, 571 (8th Cir. 1984) ("Whether a given individual is an employee or independent contractor is a question of law, which must be decided by reviewing the particular facts in each case.") (ERISA case).[3]

---

[2]The Alfords do claim as an "alternative" issue that there is a genuine issue of material fact "as to who the IRS claims to be the employer of Rev. Alford, " and that the case therefore should be remanded for trial. Brief of Appellants at 14. Our decision on the employee question forecloses any need to consider this argument.

[3]Although this is not a point of dispute for the parties here, there is authority from this Circuit for the proposition that the "determination of an employer-employee relationship involves a mixed question of law and fact," and that because "the decision is predominantly one of determining whether the established facts fall within the relevant legal definition, and does not involve constitutional issues, we apply a clearly erroneous standard of review." Sargent v. Commissioner, 929 F.2d 1252, 1254 (8th Cir. 1991) (citing as authority a Ninth Circuit case that held existence of exigent

At all times relevant to this appeal, James Alford was an ordained minister holding credentials in the Assemblies of God Church, a national religious organization with its headquarters in Springfield, Missouri. The Assemblies of God organization awards credentials to those who have been approved to be ministers of the church. Ordination is the third and highest level a minister in the church may attain. During 1986, 1987, and 1988, Alford was the pastor at the First Assemblies of God Church in Hampton, Arkansas.

The national church is headed by the General Superintendent and governed by the General Council. The General Council is composed of all ordained Assemblies of God ministers with current fellowship certificates (currently holding credentials) and all Assemblies of God churches holding affiliation certificates. The work of the General Council is carried out through geographically determined regional districts, one of which is the state of Arkansas. The Arkansas District Council has oversight responsibility for some 430 Assemblies of God churches and over 1000 Assemblies of God ministers in the state, which included Alford during 1986, 1987, and 1988 when he was pastor at the Hampton Church.

---

circumstances is mixed question of law and fact reviewed de novo in part because of the constitutional question involved) (footnote omitted). But we agree with a recent opinion wherein this Court concluded that the language from Sargent was limited to the facts of that case. See Berger Transfer & Storage v. Central States, S.E. & S.W. Areas Pension Fund, 85 F.3d 1374, 1377-78 (8th Cir. 1996). In Sargent, the question was whether individuals were employees of a professional sports club or whether they were employees of their respective professional service corporations, not whether they were employees or independent contractors. But the task in this case is similar to that in Berger Transfer; we must apply the common law agency test to the facts to determine whether Alford is an employee or an independent contractor within the meaning of the applicable provisions of the tax code. In accordance with Berger Transfer, we consider that "the ultimate conclusion . . . is a question of law." Id.

Based on the stipulated facts, the District Court concluded that Alford could not be considered an employee of the Hampton Church. The United States does not appeal that determination.[4] The District Court went on, however, and found that "[a]n extremely close relationship exists" among the national, regional, and local church entities and "thus, the control exercised by each of them should be considered together." Alford v. United States, Civil No. 94-1074, mem. op. at 9 (W.D. Ark. filed June 28, 1996). The court concluded that Alford was an employee because of the "significant control by the Hampton Church, through its supervision by the District Council and the National Church, over the manner in which James Alford performed his work." Id. We think the court erred.

As an initial matter, we are not convinced that the District Court properly combined the control exercised over Alford by three separate entities in order to arrive at its decision that Alford was an employee. We are concerned that this rationale leaves us unable to identify Alford's actual employer. It seems axiomatic that one cannot be deemed an employee for the purpose of determining the extent to which business expenses are deductible under the tax code unless an employer in whose service those expenditures were made can be identified. But the question of whether aggregation is proper is not one we need reach today. Instead, we hold that the District Court erred in concluding that, even combined, the three entities' right to control Alford was sufficient to deem him an employee for purposes of the business expense deduction.

The United States urges us to rely on the opinion from the United States Tax Court in Weber v. Commissioner, 103 T.C. 378 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995) (2-1 decision).[5] In Weber, the court determined that a United Methodist minister

_____

[4]The United States filed a cross-appeal initially, but it was dismissed.

[5]The Fourth Circuit adopted the tax court's opinion as its own and reproduced it in its entirety in an appendix to its decision. See Weber v. Commissioner, 60 F.3d

was an employee, but did "not decide which part of the United Methodist Church is the employer" because that was not an issue in the case. Weber, 60 F.3d at 1114. The court noted, however, "that there may be differences with respect to ministers in other churches or denominations, and the particular facts and circumstances must be considered in each case." Id. at 1114 n.1. That note was probably a reference to another tax court opinion filed the same day, Shelley v. Commissioner, 68 T.C.M. (CCH) 584 (1994).[6] In Shelley, a minister of the International Pentecostal Holiness Church (IPHC) was held to be an independent contractor for the purpose of deducting business expenses. Differences in church structure between the Methodist Church and the IPHC accounted for the contrary results, but the dissenting judge in the Fourth Circuit's decision in Weber believed that the factual differences between the two cases were not sufficient to warrant different results.

As Weber, Shelley, and other opinions dealing with this question demonstrate, the employee-independent contractor inquiry is extraordinarily fact intensive, notwithstanding that the ultimate question is one of law. We conclude, after applying the law to the stipulated facts, that for purposes of this appeal Alford was an independent contractor and was not an employee during the tax years in question.

The Supreme Court in Darden noted a number of factors to be considered in applying the common law agency test, stressing that "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." Darden, 503 U.S. at 324 (quoting NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)). Besides evaluating "the hiring party's right to control the manner and means by which

---

1104, 1105-1114 (4th Cir. 1995). When discussing the case, we will refer to and cite the reported decision of the Fourth Circuit, the highest court to have considered the case.

[6]The Commissioner's appeal from this decision was voluntarily dismissed on September 21, 1995.

the product is accomplished," the factor upon which the District Court in this case concentrated, we also look at

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; [and ] the provision of employee benefits.

Id. at 323-24 (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (footnotes omitted)); see also Restatement (Second) of Agency § 220(2) (1958) (suggesting a number of "matters of fact" to be considered in "determining whether one acting for another is a servant or an independent contractor").

We begin our analysis with Alford's relationship with the Hampton Church. Alford was pastor at the church for a total of about ten years. The local church hired Alford and paid him a salary of $24,400 in 1986, $23,425 in 1987, and $22,100 in 1988. The salary was negotiated by Alford and the church and, although it was not calculated as a percentage of the revenues of the Hampton Church, it was dependent in part upon local church revenue. The church paid Alford a $4000 housing allowance and he did not pay rent when he lived in the parsonage. The church paid Alford an additional $250 each quarter so that he could pay his social security taxes; paid for his health insurance; for Alford's benefit paid into a retirement fund set up by the national church; and provided Alford a credit card for gasoline, on which he charged up to $520 a year. He received an annual $750 Christmas gift from the congregation, in addition to his salary. The church provided a desk, chair, and copy machine for the pastor's use, but Alford used his own desk and chairs, and in addition provided and used for the

benefit of the church his own car, typewriter, computer, and library.  Alford signed a contract with the church and paid his own self-employment taxes.

For the most part, Alford set his own schedule (except of course for regularly scheduled church services).  He was free to perform weddings, funerals, and revivals for a fee, and was not required to pay over any of the fees to the church.  He was not expected to pay for a substitute pastor if one was necessary.  Alford arranged for evangelists or special speakers at the Hampton Church, and contributed to special collections taken for them.

The District Court concluded, and the United States does not dispute, that under these circumstances (much closer to the facts in Shelley than to those in Weber) Alford cannot be considered to have been an employee of the Hampton Church within the meaning of the relevant provisions of the tax code.  The question now, however, is whether Alford was indeed an employee when we consider, in addition, the regional and national churches' right to control him in the performance of his duties as pastor of the Hampton Church.  We note that the Darden factors other than the right to control become less relevant to this part of our analysis, because most of those factors concern the services the individual in question actually rendered, and Alford clearly did no work for the regional or national offices during the tax years at issue (yet another reason, we might add, that the District Court's aggregation of the control of the three entities is questionable).  Further, it is important to remember that we look at the district and national entities' right to control Alford, the putative employee, in the performance of his duties, not at any right they may have had to control the Hampton Church.

The General Council's and District Council's right to control Alford during the relevant years extended primarily to their function in awarding credentials to ministers like himself.  Generally, the church has established certain criteria that must be met for an individual such as Alford to obtain credentials initially and to renew that status annually.  There are standards for the education a minister must acquire (which he must

obtain and pay for himself) and for his performance on certain tests. Other requirements include subscribing to the doctrinal statement of the Assemblies of God, which sets forth the religious beliefs of the church, its ministers, and its members, and to the form of church government. Ordained ministers must preach thirteen times a year, but topics are not decreed by the regional or national organizations. Ministers holding credentials cannot preach in churches other than Assemblies of God churches without permission of the District Council. Ministers may be disciplined for what the church considers failure to follow church doctrine and for lapses in personal conduct, and may, in fact, have their credentials revoked. With some exceptions not relevant here, a minister must tithe to both the regional and national organizations. Attendance at certain meetings is expected, but not required. Thus it is apparent that, while the regional and national churches had doctrinal authority to exercise considerable control over Alford as regards his beliefs and his personal conduct as a minister of the church, they did not have "the right to control the *manner and means by which the product [was] accomplished*." Darden, 503 U.S. at 323 (quoting Reid, 490 U.S. at 751) (emphasis added).

The District Court and the United States make much of the fact that Alford, as a minister holding credentials, was "amenable" to the General Council and to the District Council in matters of doctrine and conduct. But this is not unusual in such a profession, and actually is merely a shorthand way of describing the parent church's doctrinal and disciplinary control discussed above. The control exercised by the regional and national organizations, and their right to control Alford, was no more nor less than most professions require of individuals licensed or otherwise authorized to work in the profession. State bar associations, for example, have certain education requirements and demand a certain level of performance on a bar examination before an individual can be licensed to practice law. On an annual basis, such associations require the payment of dues and often the completion of continuing legal education in order for an attorney to retain his license. State bar associations are empowered to monitor attorneys' behavior and to discipline them as they see fit, including the

revocation of an attorney's license to practice law (disbarment). Yet no one would suggest that, by virtue of this right to control an attorney's working life, the bar association is his employer, or even one of his employers.

Further, we are somewhat concerned about venturing into the religious arena in adjudicating cases such as this one, and interpreting what really are church matters as secular matters for purposes of determining a minister's tax status. The doctrinal and disciplinary control exercised by the General and District Councils, or available for their exercise, "is guided by religious conviction and religious law, not by employment relationships, and . . . should be considered impermissible or immaterial in determining the employment status of a religious minister." Weber, 60 F.3d at 1115 (Widener, J., dissenting).

Perhaps more telling in this case are the aspects of Alford's work for the Hampton Church that the General and District Councils had *no* right to control during the years in question. They did not locate the job at the Hampton Church for Alford nor could they have "placed" him as pastor there. They did not and could not have negotiated his salary and benefits. They could neither have guaranteed him a job (with the Hampton Church or any other local church) nor could they have guaranteed his salary. The regional and national churches could not have fired him from the job as pastor of the Hampton Church (although if he had lost his credentials the Hampton Church would have lost its affiliate status if it had kept him on as pastor). They could not have required him to retire. They did not observe or grade his performance at the Hampton Church to determine if his credentials should be renewed, nor did they regularly evaluate him. Clearly the national and regional entities had little if any control over--or right to control--the "manner and means" Alford employed in accomplishing his duties as pastor at the Hampton Church during 1986, 1987, and 1988.

We conclude that the General and District Councils' right to control Alford, in combination with the common law agency factors present in Alford's relationship with

the Hampton Church that weigh in favor of employee status, do not suffice to render Alford an employee within the meaning of the relevant provisions of the tax code. Alford has met his burden of proving that the IRS's determination of his employment status for the tax years 1986, 1987, and 1988 was incorrect.  See Welch v. Helvering, 290 U.S. 111, 115 (1933); Askew v. Commissioner, 805 F.2d 830, 832 (8th Cir. 1986). Accordingly, we reverse and remand for entry of judgment in favor of the Alfords.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT