T.C. Memo. 2002-222


UNITED STATES TAX COURT


KEVIN AND BRIDGET NAUGHTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10731-00.                    Filed September 4, 2002.


For 1996 and 1997, Ps K and B filed with their
joint tax returns Schedules C, Profit or Loss From
Business, on which they reported income and deducted
claimed expenses related to K's rendering of medical
services for DWP.

<u>Held</u>:  During 1996 and 1997, K was an employee of
DWP and not an independent contractor.  Ps therefore
are not entitled to report K's income and expenses on
Schedules C.

<u>Held</u>, <u>further</u>, Ps are not entitled to deduct
business expenses claimed on their 1996 and 1997
returns.

Kevin and Bridget Naughton, pro sese.

<u>Michael S. Hensley</u>, for respondent.

MEMORANDUM OPINION

NIMS, Judge:  Respondent determined Federal income tax deficiencies for petitioners' 1996 and 1997 taxable years in the amounts of $7,637 and $4,237, respectively.  This case is presently before the Court on respondent's motion for summary judgment.  The principal, and to a significant degree interrelated, issues for decision involve whether petitioner Kevin Naughton was an employee or an independent contractor during 1996 and 1997 and whether he is entitled to deduct business expenses claimed on Schedules C, Profit or Loss From Business.  Additional adjustments either have been conceded or are computational in nature.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Petitioners signed their joint 1996 Form 1040, U.S. Individual Income Tax Return, on July 29, 1997, and their joint 1997 Form 1040 on March 13, 1998.  Both returns were also signed by John E. Judge as preparer and were filed with the Internal Revenue Service.  Attached to each return was a letter stating that Kevin Naughton (petitioner) was a physician

rendering professional services to the City of Los Angeles Department of Water and Power (DWP) and that DWP reported income of physicians on Forms W-2, Wage and Tax Statement, and withheld taxes and contributions, over physician objections. The letters were evidently intended to explain petitioner's reporting of his professional income, and deducting of expenses, on Schedules C.

By late 1997, petitioners and respondent were engaged in correspondence regarding changes to petitioners' return for 1996. By late 1998, copies of letters and other materials between the parties indicate that both 1996 and 1997 were under consideration.

In July of 1999, petitioners filed a Form 4506 with respondent requesting copies of their 1996 and 1997 tax returns. By a letter dated October 18, 1999, they were informed that "At this time we are unable to secure a copy of your form(s) 1040 for tax year(s) 1996 & 1997."

Subsequently, a notice of deficiency was issued to petitioners for the 1996 and 1997 taxable years, and a petition in response thereto was filed with this Court. Petitioners at that time resided in Laguna Beach, California. Respondent answered the petition, and the case was duly calendared for trial.

Thereafter, respondent sent to petitioners a letter in accordance with Branerton Corp. v. Commissioner, 61 T.C. 691, 692 (1974) (Branerton letter), suggesting a conference between the parties and requesting information and documentation in support of the positions taken by petitioners on their return. With respect to petitioners' claim that petitioner should be classified as an independent contractor, respondent identified as possible supporting materials billing records for patients treated outside of DWP, employment contracts, business licenses, business cards, advertising, yellow pages listings, accounting records, and so forth. As regards the claimed expenses, requested items included receipts, invoices, ledgers, journals, etc., showing that the amounts were actually paid or incurred and were ordinary and necessary business expenses. Respondent in the Branerton letter also conceded certain adjustments reflected for 1997 in the notice of deficiency, primarily related to self-employment income and taxes.

Petitioners neither attended the proposed meeting nor contacted respondent prior to the suggested date. A letter from Mr. Judge was apparently thereafter sent to the Internal Revenue Service and indicated that petitioners were in Ireland and were suffering from medical difficulties. Petitioners did not at that juncture, nor at any time since, produce the corroborating materials suggested by respondent.

Respondent subsequently served on petitioners requests for admission pursuant to Rule 90. Having received no response after more than 2 months, respondent then filed a motion for summary judgment and included with the motion revised computations of the deficiency for 1997, in conformity with the above-mentioned concessions. The Court in due course ordered petitioners to respond to respondent's motion.

Petitioners timely submitted their opposition to the motion for summary judgment. The Court at the same time also received from petitioners a response to respondent's requests for admission. By order, the Court declared withdrawn and set aside any deemed admissions made by petitioners by reason of Rule 90(c) and granted leave for the filing of petitioners' response. In their response, petitioners admitted certain items primarily of a formal or administrative nature, denied several other points with very brief explanations, and denied the remainder (constituting the majority of the requested admissions) with no explanation.

Petitioners failed to attend a hearing thereafter scheduled by the Court, and, although Mr. Judge attempted to participate, his appearance was not permitted since he had been suspended from practice before this Court.

The Court and counsel for respondent addressed the status of the pending motion for summary judgment. The Court observed that petitioners had not "done anything like cooperating * * * or

getting competent counsel to represent them." Given these circumstances, the Court at that time ordered all requested admissions that had been denied by petitioners without any explanation to be deemed admitted. In this posture, respondent's motion for summary judgment was taken under advisement.

Discussion

## I. Standard for Summary Judgment

Rule 121(a) allows a party to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Rule 121(b) directs that a decision on such a motion shall be rendered "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. Estate of Chenoweth v. Commissioner, 88 T.C. 1577, 1578 (1987). Facts are viewed in the light most favorable to the nonmoving party. Id. However, where a motion for summary judgment has been properly made and supported by the moving

party, the opposing party may not rest upon mere allegations or denials contained in that party's pleadings but must, by affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial.  Rule 121(d).

Furthermore, it is well established in this Court that summary judgment is appropriate where facts deemed admitted pursuant to Rule 90, for failure properly to respond to requests for admission, support a finding that there is no genuine issue of material fact.  Morrison v. Commissioner, 81 T.C. 644, 651 (1983); Shepherd v. Commissioner, T.C. Memo. 1997-555; Parker v. Commissioner, T.C. Memo. 1989-196.  We are satisfied that the foregoing situation exists here and, for the reasons detailed below, will grant respondent's motion for summary judgment.

II.  Validity of the Deficiency Notice

As a threshold matter, we briefly address a procedural contention raised in petitioners' opposition.  Petitioners argue that the notice of deficiency issued in this case is legally defective and fatally flawed.  In support of this position, petitioners rely principally on Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983).  Although their argument is less than entirely clear from their submissions, petitioners apparently are of the opinion that the circumstances of this case show a failure by respondent to examine the returns and thereby determine a deficiency as required by Scar v.

Commissioner, supra.  In this connection, petitioners point to respondent's letter of October 18, 1999, indicating an inability at that time to secure and supply copies of petitioners' 1996 and 1997 Forms 1040, and to correspondence between the parties which reflected amounts due differing from those stated in the notice of deficiency.

Subsequent caselaw, however, has limited application of the theory espoused in Scar v. Commissioner, supra, to those instances "'where the notice of deficiency reveals on its face that the Commissioner failed to make a determination.'"  Kantor v. Commissioner, 998 F.2d 1514, 1521-1522 (9th Cir. 1993) (quoting Clapp v. Commissioner, 875 F.2d 1396, 1402 (9th Cir. 1989)), affg. in part and revg. in part on other grounds T.C. Memo. 1990-380.  Conversely, validity is established where the "notices of deficiency in the record make absolutely clear that the Commissioner did examine * * * [the taxpayers'] returns, and did at least consider * * * [the taxpayers'] deductions."  Clapp v. Commissioner, supra at 1402.  It is the latter situation which is present with respect to the case at bar.

The notice of deficiency references numerous amounts that correspond directly to figures reported on petitioners' returns. The document also makes adjustments to specific items shown in the Forms 1040 and states reasons therefor.  Consequently, the notice of deficiency is valid under Scar v. Commissioner, supra.

III.  Employment Status

The parties in this case focus their dispute on whether petitioner is to be considered an employee or an independent contractor for Federal income tax purposes.  In general, business expenses of an independent contractor, if otherwise allowable, are deductible in full pursuant to section 62(a)(1) and are reported on Schedules C.  Unreimbursed business expenditures of an employee, on the other hand, are typically permitted only as miscellaneous itemized deductions under section 67, to the extent in excess of 2 percent of adjusted gross income, and are reported on Schedules A, Itemized Deductions.  Petitioners maintain that petitioner is an independent contractor; respondent characterizes petitioner as an employee.

Neither "independent contractor" nor "employee" is expressly defined in the Internal Revenue Code for purposes of Schedule C versus Schedule A deductions.  Alford v. United States, 116 F.3d 334, 335-336 (8th Cir. 1997); Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995).  The Supreme Court, however, has established that "'when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.'" Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-323 (1992) (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730,

739-740 (1989)). Hence, absent an overriding statutory definition, common law agency principles apply in determining the existence of an employment relationship. <u>Adcock v. Chrysler Corp.</u>, 166 F.3d 1290, 1292 n.3 (9th Cir. 1999); see also <u>Alford v. United States</u>, <u>supra</u> at 336; <u>Beech Trucking Co. v. Commissioner</u>, 118 T.C. 428, 440 (2002); <u>Weber v. Commissioner</u>, <u>supra</u> at 386.

General guidance addressing common law precepts can be found in the explanation set forth in section 31.3121(d)-1(c), Employment Tax Regs.:

> <u>Common Law Employees</u>.--(1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.
>
> (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent

contractor.  An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules.  Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.  [Emphasis added.]

From such general principles, courts have identified a number of factors relevant in evaluating common law employment status, including the following:  (1) The right of the hiring party to exercise control over the manner and means, i.e., the details, of the work; (2) the discretion of the hiring party over the time and duration of the work; (3) the permanency of the relationship; (4) the right of the hiring party to discharge; (5) the source of and investment in the instrumentalities, tools, and facilities of the work; (6) the method of payment; (7) the provision of employee benefits; (8) the opportunity of the hired party for profit or loss; (9) the right of the hiring party to assign additional projects; (10) the offering by the hired party of services to the general public; (11) the skill required for the work; (12) whether the type of work is part of the hiring party's regular business; and (13) the relationship the parties believe they are creating.  Nationwide Mut. Ins. Co. v. Darden, supra at 323; Beech Trucking Co. v. Commissioner, supra at 440; Weber v. Commissioner, supra at 387; Kiddie v. Commissioner, 69 T.C. 1055, 1057-1058 (1978).

In evaluating these factors, an additional axiom which has become firmly entrenched in caselaw is that the extent of control necessary to find employment status is less for a professional, as opposed to a nonprofessional, worker.  Azad v. United States, 388 F.2d 74, 77 (8th Cir. 1968); Weber v. Commissioner, supra at 388; Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 234 (1987), affd. 862 F.2d 751 (9th Cir. 1988); James v. Commissioner, 25 T.C. 1296, 1301 (1956).  This Court, for instance, in a case involving a physician, early characterized the requisite control as "more tenuous and general" and observed that "despite this absence of direct control over the manner in which professional men shall conduct their professional activities, it cannot be doubted that many professional men are employees." James v. Commissioner, supra at 1301.

As regards the instant case, we are satisfied that the foregoing criteria, in conjunction with the facts admitted and deemed admitted, show as a matter of law that petitioner must be treated as an employee.  Pursuant to Rule 90 and other materials in the record, it has been established that DWP had sufficient right to control the manner in which work was performed by petitioner during 1996 and 1997.  Petitioner was directly supervised by Dr. Miller, another individual hired by DWP.  DWP scheduled all of petitioner's appointments, Dr. Miller controlled which patients petitioner saw, and all patients seen by

petitioner during the years at issue were DWP employees. Petitioner was employed on a full-time basis and worked weekly, Mondays through Fridays, from 7:30 a.m. until 4:15 p.m., for DWP during 1996 and 1997. His hours were controlled by Dr. Miller. Petitioner's relationship with DWP had been ongoing since 1990. All medical services performed by petitioner for remuneration during the years at issue were performed at DWP facilities. DWP provided petitioner with medical office space, and petitioner did not pay rent for medical office space. All supplies used by petitioner in providing medical services were furnished by DWP.

Petitioner was paid a salary by DWP during 1996 and 1997. He did not bill patients for the medical services he performed. Petitioner did not make his services as a physician available to the general public during the years at issue, and he performed no services as a physician for remuneration during that period outside of his relationship with DWP. He did not have a business license to perform medical services as a sole proprietor in 1996 or 1997.

DWP issued to petitioner Forms W-2 for both 1996 and 1997, and withheld Federal income tax, State income tax, Social Security tax, and Medicare tax. DWP also paid the employer's share of Social Security and Medicare taxes with respect to petitioner's compensation during those years.

In the aggregate, then, the admitted facts and circumstances detailed above are more than sufficient to establish an employer-employee relationship between petitioner and DWP during 1996 and 1997. Furthermore, neither the additional requested admissions denied by petitioners with cursory explanations nor certain other points raised by petitioners in their opposition to respondent's motion require a different conclusion.

As to the substance of petitioner's relationship with DWP, petitioners made superficial attempts to address several of the factors cited by the courts as pertinent to the employment inquiry. For example, petitioners denied that DWP had the right to discharge petitioner, explaining rather that DWP "did have the right, with Petitioner Kevin Naughton's consent, to terminate their contractual relationship." We, however, find it difficult to imagine or accept such a relationship where the hiring party would literally be required to obtain the permission of the worker to fire him or her. We also note that petitioners stated in their opposition to respondent's motion that the relationship "could be terminated at will by either party". Accordingly, petitioners' descriptions are at minimum akin to a concession that DWP could wield significant control over the duration of the work arrangement. That, in turn, would be tantamount to a right to discharge.

Petitioners in their opposition further averred that petitioner was given no instruction from DWP as to how to discharge his professional responsibilities; was provided no professional training by DWP; did not receive employee benefits such as health insurance, vacation pay, or pension participation; was not reimbursed for the expenses reflected on Schedules C; and could have incurred a loss, "though unlikely". Petitioners also emphasized that the medical services performed by petitioner were not a key factor in the power generation business of DWP. In addition, petitioners attached to their opposition a photocopy of petitioner's DWP identification badge, which states "CONTRACTOR MEDICAL", and a Form 1099-MISC, Miscellaneous Income, which reports nonemployee compensation from DWP for 1990. Petitioners contend that both show DWP considered petitioner an independent contractor.

Nonetheless, even if we were to accept petitioners' above-recited factual allegations as accurate, they would fall far short of overcoming the conclusion compelled by the totality of the admitted facts. We particularly note that the two documentary items offered are at most a reflection of how the parties thereto viewed the relationship and even on that score are outweighed by the more contemporaneous and probative Forms W-2. We also observe that petitioner apparently acquiesced in DWP's use of Forms W-2 despite purported objections.

Consequently, petitioners have failed the charge of Rule 121(d) to set forth specific facts showing there is a genuine issue for trial.

We likewise give little import to petitioners' denials of certain more overarching requests for admission. Petitioners refused to admit that petitioner did not perform medical services as a sole proprietor on grounds that "Kevin Naughton, M.D. did perform medical services as a sole proprietor/practitioner under contract to the Los Angeles Department of Water and Power". They similarly denied that petitioner was employed as a physician by DWP on grounds that "he provided services as a sole practitioner physician to the Department of Water and Power". To reiterate a point made previously, such conclusory assertions are hardly sufficient to override what can be drawn from evaluating the full circumstances of the case and certainly fail to set forth specific facts showing there is a genuine issue for trial.

As a final matter relating to petitioner's employment status, we make brief mention of section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2885 (Section 530). Petitioners devote a significant portion of their opposition to this statute, asserting that DWP had a "reasonable basis" for treating petitioner as an independent contractor. Section 530, however, has no applicability to any issue we consider here. As

the Court of Appeals for the Eighth Circuit has explained in a scenario where medical residents sought refund of employment taxes withheld from their stipends:

> section 530 allows employers to avoid liability for past-due employment taxes when the employer erroneously but reasonably classified employees as independent contractors rather than employees.
>
> By its very terms, section 530 is a relief provision available only to employers who erroneously classify their employees. Section 530 applies if (1) the taxpayer does not treat a worker as an employee for employment tax purpose during a particular period; (2) the taxpayer files all required federal employment tax returns on a basis consistent with this treatment; and (3) the taxpayer has a reasonable basis for not treating the worker as an employee. If these requirements are satisfied, tax liability is terminated "for purposes of applying such taxes for such period with respect to the taxpayer." Notwithstanding the clarity of the statute, the residents contend that a broad interpretation of the term "taxpayer" is appropriate because they are, at least in a general sense, "taxpayers." We do not agree, for the focus of section 530 is on the taxpayer's treatment of the taxpayer's employees. In this context, it is clear that the term "taxpayer" refers only to employers and not to employees. [Ahmed v. United States, 147 F.3d 791, 797 (8th Cir. 1998); citations omitted.]

Moreover, the view of this Court is in accord with that recounted above, and we have expressly held that "'Taxpayer' as used in the context of Section 530 refers to an employer". Pariani v. Commissioner, T.C. Memo. 1997-427. Accordingly, petitioners' contentions in this regard are not germane and warrant no further discussion. We hold that petitioner was an employee of DWP and not an independent contractor for Federal tax purposes.

IV.  Claimed Business Expenses

From our holding above, it follows that petitioners would not be entitled to deduct claimed business expenses on Schedules C by reason of petitioner's status as an employee of DWP.  In addition, any deduction of the claimed business expenses, even on Schedules A, is precluded on account of petitioners' failure properly to substantiate the expenditures.

The business expenditures potentially deductible in accordance with sections 62(a) and/or 67 are described in section 162(a) as "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  For purposes of this section, an individual may engage in the trade or business of rendering services as an employee.  Johnson v. Commissioner, 115 T.C. 210, 217 (2000); O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).

The breadth of section 162(a) is tempered by the requirement that any amount claimed as a business expense must be substantiated, and taxpayers are required to maintain records sufficient therefor.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.[1]  When a taxpayer adequately

---

[1] Sec. 7491, effective for court proceedings which arise in connection with examinations commencing after July 22, 1998, can operate in specified circumstances to place the burden of proof on the Commissioner if the taxpayer introduces credible evidence

(continued...)

establishes that he or she paid or incurred a deductible expense but does not establish the precise amount, we may in some circumstances estimate the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must, however, be sufficient evidence in the record to provide a basis upon which an estimate may be made and to permit us to conclude that a deductible expense was incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Furthermore, business expenses described in section 274 are subject to rules of substantiation which supersede the doctrine of Cohan v. Commissioner, supra. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274 provides that no deduction shall be

---

[1](...continued)
with respect to any relevant factual issue. The provisions of the section are not invoked, however, where there is a failure by the taxpayer to substantiate items, maintain required records, or cooperate with reasonable requests by the Commissioner for information. Sec. 7491(a)(2); Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). Here, neither party contends that sec. 7491 is applicable, and the record indicates that at least the examination for 1996 began before July 22, 1998. Moreover, petitioners in any event have not satisfied the aforementioned prerequisites. Sec. 7491 thus has no bearing on our analysis in this case.

allowed for, among other things, traveling expenses, entertainment expenses, meal expenses, and expenses with respect to listed property (as defined in section 280F(d)(4) and including passenger automobiles) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) The amount of the expenditure or use; (2) the time and place of the expenditure or use; (3) the business purpose of the expenditure or use; and (4) in the case of entertainment, the business relationship to the taxpayer of the persons entertained. Sec. 274(d).

On their Schedules C, petitioners claimed amounts for car and truck expenses, depreciation and section 179 expense, insurance, legal and professional services, office expenses, rent, repairs and maintenance, taxes and licenses, and other expenses (including continuing education, professional dues, parking, telephone, group insurance, books and periodicals, drugs and medications, and supplies). Respondent's requests for admission contained the following paragraphs on this issue: "Petitioners have presented no evidence to substantiate any of their claimed deductions on their 1996 Schedule C"; "Petitioners have presented no evidence that any of their claimed deductions on their 1996 Schedule C were ordinary and necessary business

expenses"; "Petitioners have presented no evidence that any of their claimed deductions on their 1996 Schedule C were ever paid or incurred"; "Petitioners have presented no evidence that any of their claimed deductions on their 1996 Schedule C were paid or incurred in taxable year 1996"; "Petitioners have presented no evidence that their claimed deductions on their 1996 Schedule C were other than personal expenses". An identical series of statements was enumerated with respect to 1997.

Petitioners deny the foregoing requested admissions in their response and explain that "Petitioners' denial is based on the fact that their Income Tax Returns for both years were signed under penalty of perjury. This constitutes evidence of the deductibility of the expenses claimed." They do not further address these deductions in their opposition to respondent's motion for summary judgment, and they have at no time stated that they possess and will present to respondent and/or the Court documentary or other supporting evidence with respect to the claimed expenditures.

Contrary to petitioners' suggestion, it is axiomatic that neither tax returns themselves, nor the execution of such forms under penalty of perjury, establishes the truth of items recited therein. Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). Because petitioners have

not shown that a genuine issue for trial exists as to their entitlement to business expense deductions for 1996 and 1997, we will grant respondent's motion for summary judgment.

To reflect the foregoing,

<u>An appropriate order and decision will be entered granting respondent's motion for summary judgment</u>.